E-FILED
Wednesday, 08 February, 2017  02:16:28 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| MICHAEL S. WHITLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01223-JBM-JEH |
| | ) | |
| BRADLEY UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER & OPINION</u>

This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 12). The Complaint (Doc. 1) alleges claims of sexual harassment, retaliation, and gender discrimination, in violation of 42 U.S.C. § 2000e-2(a)(1). For the reasons discussed below, Defendant's Motion to Dismiss is granted.

### I. BACKGROUND

The allegations in this case arise from Plaintiff's employment at Defendant, Bradley University. Around July 30, 2007, Plaintiff began working for Defendant as a Senior Network Analyst, within Information Resources and Technology ("IRT") for the Computing Services Department. (Doc. 1 at 3). Plaintiff reports directly to David Scuffham, the Director of System's Integration and Security. (Doc. 1 at 3). Mr. Scuffham reports directly to Sandra Bury, the Executive Director of Computing Services and Interim Chief Information Officer/Associate Provost. (Doc. 1 at 4).

Plaintiff's Complaint arises from his interactions with Ms. Bury. Although Plaintiff's relationship with Ms. Bury has been tenuous over the past nine years, (Doc.

1 at 5-6), this Complaint deals specifically with a series of events beginning on April 17th, 2015, and culminating in this Complaint. The Court will summarize these events in chronological order.

### A. THE APRIL 17TH EVENTS

On or around April 17th, 2015, Plaintiff was asked to cover the Bradley University Commencement for another colleague, which was apparently contrary to Plaintiff's original understanding. (Doc. 13-2 at 19). In response, Plaintiff sent two different emails. These emails resulted in a series of responses between Plaintiff, Ms. Bury, and Mr. Scuffham.

At 9:28 AM, Plaintiff sent his first email to Ms. Bury, Mr. Scuffham, and at least one other coworker. (Doc. 13-2 at 19). In the email, Plaintiff heatedly complained about his coworkers and the request to cover the event. (Doc. 13-2 at 19). Additionally, Plaintiff accused two of his coworkers of being deceitful or dishonest in their interactions with him. (Doc. 13-2 at 19) ("Everything was going great until Rick came back. Now we are back to the *same old song and dance*. . . . Bottom line I am sick and tired of Shayne and the *games he plays*.") (emphasis added).

At 10:44 AM, Plaintiff sent his second email to Ms. Bury, Mr. Scuffham, and his two coworkers, Rick Sanders and Shayne Ghere. (Doc. 13-1 at 39). In the email, he stated that he would cover the event. (Doc. 13-1 at 39). He wrote:

> "I would appreciate . . . no further comments about my other job. I have not yet seen a Bradley law, rule, policy, procedure, ordinance, code, etc., that says we cannot work a second job. Any further comments from anyone about my other job will be referred to Human Resources and the Provost."

2

(Doc. 13-1 at 39).

Ms. Bury replied to the 9:28AM email at 12:54 PM. (Doc. 13-2 at 18-19). She told him that his accusations were inappropriate. (Doc. 13-2 at 18-19). She informed him that if he had an issue with a coworker that he should contact Mr. Scuffham or her. (Doc. 13-2 at 18-19). She thanked him for being willing to cover the event. (Doc. 13-2 at 18-19). And lastly, she informed him that she had asked HR if there were any guidelines or policies about a Bradley University employee having a second job of which they would need to be aware. (Doc. 13-2 at 18-19).

Less than ten minutes after Ms. Bury emailed her response, Plaintiff sent another heated email to Ms. Bury and Mr. Scuffham. (Doc. 13-2 at 18). It stated:

> "No, I didn't mean to include Shayne [in his previous email], but I don't care if he gets upset about it. All the shit he pulled before upset me, so he can just get over it. He can sue me if he wants to and hire 8 lawyers and spend $500,000 if that's what he wants to do. I will fight him without a lawyer and I will win. All the crap I have been through the past years has helped me in that regard. Shayne's threats of legal action don't intimidate me, nor do Rick's Marine like psychological tactics. Yes, we are trying to repair the relations with Shayne. He and Rick have a part in that too. How they handled this was uncalled for, I apologize to nobody, and think the way I handled it was necessary to establish a precedence for later. Especially with Rick. Rick is very insecure right now and is going to be flexing extra hard to try and make himself feel important and needed. I didn't need him the entire 3 months he was gone. If he wants to act like he does to others that is fine, but I will not put up with it."

(Doc. 13-2 at 18).

After receiving both of Plaintiff's emails and Ms. Bury's email, Mr. Scuffham replied to Plaintiff and Ms. Bury. Mr. Scuffham's email stated that:

> "I am only focusing on your actions, not Rick or Shayne's. Don't let Shayne or Rick push your buttons. Come talk to me. Tell Rick you need

3

> to check in with me, if you want. You always talk about how you prefer logic over emotions, but you always get emotional in these situations. You need to control your emotions and reactions and be calm and professional. It's not professional to yell, threaten, or slam the phone. Be calm. Set a good example. Speak with your actions, not your words. Nobody wants to work with someone who's angry and unpredictable. . . . *I do not want to write you up*. I want to have a group that is happy and works well together. *But, if this behavior continues, I will have no choice, but to write you up*."

(Doc. 13-2 at 18) (emphasis added).

On April 18th, Plaintiff emailed Nena Peplow, the Director of HR, to ask her whether there was an official policy that forbade a full-time Bradley University from having another part-time job. (Doc. 13-1 at 40-41). He wrote:

> "I made a statement to Sandy [Bury], Dave [Scuffham], Rick [Sanders], and Shayne [Ghere] that I was not going to tolerate any 'grief' about my second job until I see an official policy, etc. that full time BU employees are not allowed to have a second job. Does such policy exist?
>
> Sandy also commented about implementing an on call rotation. It's funny there has never been an official on call rotation ever in our department. Now all [of] the sudden, I get a second job and she talks about having one. At one time, I said we needed one and nothing ever happened back then. I just find it funny that me having a second job would be the trigger for having one now?
>
> I just wanted to document these things which is why I am emailing the email. In case there are problems later, I may refer to this Email and bring it forward that others in our department have had part-time jobs too and its never been an issue."

(Doc. 13-1 at 40-41).

Ms. Peplow responded and informed Plaintiff that there was no official policy. (Doc. 13-1 at 40). Ms. Peplow also informed Plaintiff that the part-time job could not interfere with his assigned job duties. (Doc. 13-1 at 40).

Plaintiff responded to Ms. Peplow's email. He wrote:

4

"Thank you for the reply. Nothing further has been said to me about my second job, but I'm sure it'll come up again. . . . I told you after my incident with Chuck that I am not screwing around with these people anymore. I will be the first to call the good when I see it and report when things are going well such as I did to you and Dr. Glassman on the April 1 in our meeting. But I will also act swiftly on any problems that come my way. If I continue to get grief about my second job from Rick [Sanders], Sandy [Bury], Shayne [Ghere], or anyone, it's going to be considered harassment and we will be talking to you and the Provost again. Sandy [Bury] said she was going to check with your office on if there is any policy about having a second job. Please advise her that there is not and that she needs to leave me alone about it."

(Doc. 13-1 at 40). The events of April 17th, and the subsequent emails, are the primary source of Plaintiff's Complaint. Additionally, the April 17th and 18th emails Plaintiff sent about his second job are the basis of his first retaliation claim. Plaintiff alleges that he was retaliated against because of them and that after them Ms. Bury began "building a case" against him. (Doc. 1 at 9).

### B.  SUBSEQUENT WARNINGS ABOUT PLAINTIFF'S CONDUCT

After the April 17th incident, Plaintiff was involved in a series of events where he was warned about inappropriate or unprofessional behavior. Some of these were directed expressly at him, while one was directed at his entire department. These warnings were included as support when Plaintiff received his first disciplinary warning. (Doc. 13-1 at 42). These warnings include the following events.

On April 28th, 2015, Ms. Bury emailed the IRT staff, including Plaintiff, and explained that she had received complaints of email communications between IRT members that were less than cordial. She reminded them that they needed to "strive to be respectful and professional in our communications with each other at all times." (Doc. 13-1 at 45).

5

On May 2nd, 2015, Plaintiff emailed Ms. Bury and Mr. Scuffham and told them that they should:

> "consider[] telling people that they also need to start being respectful over the phone too. I'm going to start hanging up immediately on IRT people who get snotty with me, rather than get into further confrontations like I did the other day. . . . A lot of people get this really crappy attitude when we tell them things they don't want to hear, and ask them if they checked things they were too lazy to check before they call."

(Doc. 13-1 at 47-48). On May 4th, 2015, Ms. Bury responded to Plaintiff's email and told him that hanging up on people was inappropriate and that he was expected to "be courteous and respectful on the phone, in person, and in email communications." (Doc. 13-1 at 47-48).

On June 2nd, 2015, Plaintiff emailed Mr. Scuffham to complain about a work problem that had occurred over the weekend and a work meeting that happened the previous day. Plaintiff wrote:

> "So why does troubleshooting rule? Because rather than just bitch 'I can't get on the network' like was done in yesterday's Monday morning bitch fest, which I'm about ready to quit going to after yesterday. . . . I don't think there is anyone in IRT who doesn't know that Mac addresses talk, bitching walks. . . ."

(Doc. 13-1 at 52-53). Mr. Scuffham responded that Plaintiff "need[ed] to tone down the attitude" because some people were not as technologically advanced as he is. (Doc. 13-1 at 52). Plaintiff responded that what he was asking for was not very difficult. (Doc. 13-1 at 52). Plaintiff then digressed and threatened to walk out of a meeting if he was interrupted in a meeting again. (Doc. 13-1 at 52). Mr. Scuffham responded that he needed to be calm and not let his emotions get the best of him. (Doc. 13-1 at

52). Plaintiff continued to complain because he felt that he was held to a double standard. (Doc. 13-1 at 52). Mr. Scuffham informed him that the standards were the same for everyone: he was expected to do his job, help others out, and be professional. (Doc. 13-1 at 51). Additionally, Mr. Scuffham warned that Plaintiff was wasting time by sending these argumentative emails. (Doc. 13-1 at 51). Plaintiff sent another email complaining. (Doc. 13-1 at 51). Mr. Scuffham responded with the following warning:

> "But you didn't listen at the meeting, you wanted to argue and get out of doing your job. All of our jobs are to help people get their jobs done by keeping things running. And you are still arguing and wasting my time. Next time I expect you, like everyone is expected to, to listen when someone says there is a problem, instead of arguing. . . . *If there is any of this extra arguing, etc., I will have no choice but to write you up*."

(Doc. 13-1 at 51) (emphasis added).

On June 11th, 2015, Ms. Bury emailed Plaintiff to remove signs from his cubical. (Doc. 13-1 at 50). The first sign depicted a pictograph of the expression "No Bullshit" with a circle and line through the shape of a bull with a large amount of feces below its tail. (Doc. 13-1 at 49). Ms. Bury informed him that had to be removed immediately because it was "clearly inappropriate and unprofessional." (Doc. 13-1 at 50). She also advised him that the second sign should also be removed. (Doc. 13-1 at 50). The second sign said "Look above you… ↑ Relax… See.. The sky is still there… Everything will be okay ☺." (Doc. 13-1 at 49). Ms. Bury informed Plaintiff that postings needed to be approved by the University. (Doc. 13-1 at 50).

Then, on July 15th, 2016, Plaintiff sent an email to his coworkers with the subject line of "Amazon and Walmart.com". (Doc. 13-1 at 54). Plaintiff wrote:

> "What?? I thought you network people had control of the entire internet and could fix any issue anywhere in world in the snap of a finger so long as I complained loud enough, told you how important I am, and made a big enough fuss? So what, you saying you can't?? It's an emergency I have to order my winter boots on Amazon TODAY!! Curse you!!!"

*Id*. These activities, as well as the April 17th emails, culminated in Plaintiff being formally disciplined on July 15th, 2015.

## C.  FIRST WRITTEN DISCIPLINARY WARNING AND MEETING

On July 15th, 2015, between 2:30 and 5:30PM, Plaintiff was called into a meeting with Mr. Scuffham and Ms. Bury. (Doc. 1 at 9).  At that time, Plaintiff was informed that he was receiving a written disciplinary warning because of his behavior. (Doc. 1 at 9-10). Included with this meeting was a formal written warning. The written disciplinary warning said:

> "A written warning is being issued to you today *due to your ongoing pattern of contentious, unprofessional conduct and communications* in spite of a verbal warning on September 30, 2014, and repeated advisement about ceasing these behaviors. Supporting documentation is attached.[1]

> It is necessary for you to conduct yourself in a courteous, professional manner at all times in your communications with others, including in conversations, in meetings, and in electronic mail. This includes keeping your workspace free of unprofessional signage and objects.

> This warning serves as official notice that any future incidents of similar behavior may result in disciplinary action up to and including termination of employment with Bradley University."

---

[1] The supporting documents included printed copies of the April 17th, 2015, email exchanges between Plaintiff, Ms. Bury, and Mr. Scuffham; a picture of the "Defamation Law Made Simple" sign that hung on Plaintiff's door; printed copies of the May 2nd, 2015, emails between Plaintiff and Ms. Bury; a picture of the signs Plaintiff had posted; a printed copy of Ms. Bury's email requesting that he remove the sign; printed copies of the June 2nd, 2015, emails between Plaintiff and Mr. Scuffham; and a printed copy of the July 15th, 2015, email from Plaintiff to various technology staff departments. (Doc. 13-1 at 43-54).

(Doc. 13-1 at 42) (emphasis added).

This written disciplinary warning was issued despite objections by Mr. Scuffham, Plaintiff's immediate supervisor. Mr. Scuffham issued a written statement that objected to disciplining him now because Mr. Scuffham believed Plaintiff's behavior had improved since June 2nd and he felt it sent the wrong message. (Doc. 13-1 at 57). Ms. Bury disagreed and issued the written disciplinary warning for Plaintiff's repeated inappropriate and unprofessional behavior. (Doc. 13-1 at 42).

### D. UNIVERSITY GRIEVANCE PROCESS

Because of his written disciplinary warning, Plaintiff filed an internal grievance against Ms. Bury in accordance with the Defendant's Grievance Procedure on July 30th. (Doc. 13-1 at 58). In the internal grievance, Plaintiff accused Ms. Bury of issuing the written disciplinary warning in retaliation for his April 17th and 18th emails to HR about Ms. Bury's comments on his second job. (Doc. 13-1 at 58).

On September 1st, 2015, the Defendant's Provost denied Petitioner's grievance. (Doc. 13-1 at 74). The Provost's letter included the following:

> "In accordance with the grievance procedure specified in the Administrative Handbook for non-faculty exempt employees, I appointed an ad hoc committee to provide me with advice and counsel concerning whether your grievance merited a formal review.
>
> That Committee has completed its review of your grievance and supporting materials. After a thorough review and discussion, the Committee unanimously concluded that your grievance does not merit a formal review. I concur with the Committee's recommendation.
>
> Your claims reflect management actions or decisions with which you do not agree and, perhaps, personality or other conflicts within Information

9

Resources and Technology (IRT). However, your characterizations and conclusions are not supported by the materials you provided.

It is expected that all Bradley employees will conduct themselves in a courteous and professional manner and work cooperatively. Your doing so will help avoid issues such as those you perceived and detailed in your grievance from arising again."

(Doc. 13-1 at 74).

On September 2nd, the Plaintiff responded to the denial of his grievance by emailing the Provost and the Director of Human Resources. (Doc. 13-1 at 78). The Plaintiff informed them that he would be filing a claim with the Illinois Department of Human Rights ("IDHR"). (Doc. 13-1 at 78). He accused Defendant of being biased and discriminatory. (Doc. 13-1 at 78). He claims that "[t]o not even investigate the matter with all of the evidence I sent you at all clearly shows that this is not an unbiased process" and that "[p]erhaps there is a sexual discrimination element to this as well?" (Doc. 13-1 at 78).

### E. SECOND WRITTEN DISCIPLINARY WARNING

On September 9th, 2015, Plaintiff emailed his coworkers about the equipment the department was considering. (Doc. 13-1 at 79). Plaintiff wrote:

"Fellas, let's play this one smarter than we did in the past, let's not let our management play these head games with us anymore like we used to. It's a game, a trap, let's not fall for it. Then end up getting us all pissed off at each other and we need to work together without that drama. We all know that the problem is from a central source, and it's none of us. We know Sandy tells one person one thing, and another another. And she generally does it verbally so there is no record, as she did this time.

Let's all agree that we know where the problem really lies now, and aren't going to let it get to any of us. It's not worth it.

BTW copying [HR] on this as I do anything with Sandy [Bury] any more."

(Doc. 13-1 at 79). Mr. Scuffham responded to his email and told him to "stop it. You are reading maliciousness or paranoia into this [and] that just isn't there. It's unprofessional to send a message like this." (Doc. 13-1 at 86).

As a direct result of the email, Plaintiff received a second disciplinary warning. (Doc. 13-1 at 80). Mr. Scuffham issued the written disciplinary warning because of the "email message that included unprofessional and adversarial comments which you wrote on September 9, 2015." (Doc. 13-1 at 80). The warning referenced his previous warnings and warned him to remain calm and not threaten, accuse, or be otherwise adversarial. (Doc. 13-1 at 80).

### F. IDHR COMPLAINT

On October 26th, 2015, Plaintiff filed a complaint of two claims of retaliation with the IDHR. (Doc. 13-1 at 9). Plaintiff alleged that Ms. Bury gave him the July 15th written disciplinary warning because of his April 17th and 18th emails to HR that Ms. Bury was harassing him about his second job. (Doc. 13-1 at 14). Plaintiff's second retaliation allegation was that Ms. Bury found out about his September 9th email to HR and forced Plaintiff's immediate supervisor, Mr. Scuffham, to issue him another written disciplinary warning on September 11th. (Doc. 13-1 at 20). On December 3, 2015, the IDHR issued Plaintiff a letter stating that a charge of discrimination could not be filed with them because Plaintiff had not claimed that he was discriminated against because of a protected basis. (Doc. 13-1 at 3).

11

### G. PLAINTIFF'S 2015 REVIEW

In December of 2015, Plaintiff received his yearly review, which was lower than his previous reviews. In his review, Plaintiff received an overall rating of "Meets Expectations," which is lower than the "Exceeds Expectations" rating he had received the four previous years. *Compare* (Doc. 1-1 at 34) *with* (Docs. 13-1 at 24, 25, 29, & 34). He received "Needs Improvement" marks for "Interpersonal Relationships," "Leadership: Resolves Conflict/Copes with Stress," and "Customer Service: IRT." (Doc. 1-1 at 34). He also received the following written review:

> "He provides good customer service to end users. He is patient and explains technical concepts to them in non-technical terms. On the other hand, he needs to improve his customer service skills with IRT coworkers. His expectations are too high. Not all of IRT coworkers are as knowledgeable about networking as he is. One way to improve customer service is to use the same customer service skills that are used for end users, be patient, be calm, be responsive. Mike received two written warning this year for negative comments made in emails. He has improved that behavior since then, but he still needs to work on improving his general attitude, coping with stress, and resolving conflict. I have said this before. By acting professionally and cooperatively, we can achieve so much more than if there's turmoil, tension, and in-fighting. Mike is a valued member of the group."

(Doc. 1-1 at 36). Mr. Scuffham wrote and scored the review. (Doc. 1-1 at 38). Ms. Bury asked to review it before it was given. (Doc. 1-1 at 38). She approved of the review and did not make any changes to it. (Doc. 1-1 at 38).

### H. EEOC COMPLAINT

On April 22nd, 2016, Plaintiff filed a complaint with claims of sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 1 at 25-26). His allegations were sufficiently similar to his present

claims, primarily that he reported Ms. Bury for harassing him about his second job and, as a result, he received two written disciplinary warnings and a lower yearly review score. (Doc. 1 at 25-26). On May 24th, 2016, the EEOC closed Plaintiff's file and issued him a Notice of Right to Sue Letter. (Doc. 1 at 25-26).

## I. FEDERAL LAWSUIT

On June 20th, 2016, Plaintiff filed this Complaint. (Doc. 1 at 1). He alleges six counts against Defendant: one count of hostile workplace environment, four counts of retaliation, and one count of gender discrimination. (Doc. 1 at 1-2).

Plaintiff's first claim alleged that Ms. Bury created a hostile workplace environment by making comments about Plaintiff's second job, even after he told her to stop. (Doc. 1 at 7-8). Plaintiff alleged that Ms. Bury made comments about his second job that he perceived "from Ms. Bury as intimidating, hostile, and harassing in nature." (Doc. 1 at 8). Plaintiff asserted that Ms. Bury's actions were motivated by discrimination against his gender and his salary. (Doc. 1 at 8).

Plaintiff's second claim alleged that Ms. Bury retaliated against him for complaining to HR. (Doc. 1 at 9-10). Specifically, Plaintiff alleged that on April 17th and 18th, he complained to HR that Ms. Bury was making comments about his second job. (Doc. 1 at 9). He alleged that Ms. Bury then "began building a case" to give Plaintiff a written disciplinary warning, which she did on July 15th, 2015. (Doc. 1 at 9). Therefore, Plaintiff alleged that his first disciplinary warning was retaliation for his emails to HR complaining about Ms. Bury's comments on his second job.

Plaintiff's third claim alleged that he was retaliated against for his internal grievance and his September 9th email to HR. (Doc. 1 at 13). Plaintiff filed an internal grievance against Ms. Bury on July 30th. Then, Plaintiff included HR in an email complaining about Ms. Bury on September 9th. (Doc. 1 at 13). On September 11th, he received a second written disciplinary warning because of his email. (Doc. 1 at 13). Therefore, Plaintiff alleged that he received his second written disciplinary warning in retaliation for the grievance and the September 9th email he sent.

Plaintiff's fourth claim alleged that he was also retaliated against when he received a lower yearly review score than he had historically received. (Doc. 1 at 20). Plaintiff alleged that Ms. Bury took special interest in his review and it was scored lower than Mr. Scuffham would have otherwise scored it. (Doc. 1 at 20). Therefore, Plaintiff alleged that his lower yearly review was in retaliation for the complaints he had filed against Ms. Bury throughout the year. (Doc. 1 at 20).

Plaintiff's fifth claim alleged that he did not receive as large of a raise because of his lower yearly review score. Therefore, Plaintiff alleges that he received less of a raise in retaliation for his incidents with Ms. Bury and his complaint with the IDHR.

Plaintiff's sixth claim alleged that he was discriminated against by Defendant's male managerial agents when compared to the treatment of a female coworker. (Doc. 1 at 21). Plaintiff alleged that a female coworker also had similar problems with Ms. Bury. (Doc. 1 at 21). Plaintiff alleged that the Defendant's male managerial agents— specifically the Defendant's former Provost—provided Plaintiff's female coworker with special accommodations so that the coworker would not need to work with Ms.

Bury. (Doc. 1 at 15 & 21). Plaintiff alleged that he asked Defendant's new Interim Provost and the Director of HR—both of whom are female—for similar protections. (Doc. 1 at 15, 16, & 21). Plaintiff alleged that the Director of HR denied that such protections were available at Bradley University and, even if they were, that Ms. Bury's actions did not warrant them. (Doc. 1 at 16).Therefore, Plaintiff asserted he was discriminated against because he was not given the same protections as his female coworker.

## II. LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering a Rule 12(b)(6) motion to dismiss, the Court may consider any exhibits that are attached to the pleading, because they are considered part of the pleading. Fed. R. Civ. P. 10(c). Additionally, the Court may consider any documents attached to the motion to dismiss, if they are referred to in the complaint and are central to the complaint. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Both of Defendant's exhibits are referred to in the Complaint and central to Plaintiff's claims. First, Defendant attached a copy of Plaintiff's IDHR complaint. (Doc. 13-1). Plaintiff's fourth claim alleged that he was retaliated against

for filing a complaint with the IDHR; therefore, the IDHR complaint is referenced and central to Plaintiff's Complaint. Second, Defendant attached a copy of Plaintiff's July 30th internal grievance with Defendant. (Docs. 13-2, 13-3). Additionally, Plaintiff's third claim alleged that he was retaliated against for filing this grievance; therefore, the July 30th grievance is referenced and central to Plaintiff's Complaint. (Doc. 1 at 19). Furthermore, Plaintiff did not contest the consideration of the exhibits; rather, he encouraged the Court to review them. (Doc. 14 at 14) ("As a practical matter, the Plaintiff asks the Court to review all of the documentation that was generated both prior to (Doc. #13-1, #13-2, #13-3) and after the filing of the Complaint.").

Although the court must take all well-pled allegations as true, when an exhibit incontrovertibly contradicts the allegations in the complaint, then the exhibit generally controls, even when the court is considering a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Additionally, the court may independently examine and form its own opinions about a document, because it is not bound by the party's characterization of it. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard

16

requires enough facts to "present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

There are two ways a plaintiff can find his or her case dismissed under a Rule 12(b)(6) motion to dismiss. The first is if the plaintiff did not allege enough facts to state a claim that would be plausible on its face. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially plausible, a complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The second is if he or she pled facts that show he or she has no legal claim. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). This includes not only the facts alleged within the complaint, but also the facts from documents that were incorporated into the pleadings. *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992). If the plaintiff voluntarily provides unnecessary facts in his or her complaint, those facts may be used to show that the plaintiff is not entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (citations omitted).

## III.    DISCUSSION

Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's Complaint alleged three types of Title VII claims: a hostile workplace claim, several retaliation claims, and a gender discrimination claim. Each type of claim will be analyzed separately in the order in which they appear in the Complaint. As explained

in each subsequent section, Plaintiff has failed to state a claim upon which relief could be granted for any of the claims; therefore, all six claims must be dismissed.

## A.  COUNT ONE: HOSTILE WORKPLACE

Plaintiff has failed to allege sufficient factual details to support his claim of a hostile work environment beyond a speculative level. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's race, color, religion, sex, or national origin*." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Typically, a complaint that alleges harassment is a complaint describing a hostile work environment. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015).

In order to state a hostile work environment, Plaintiff must plead that: 1) his work environment was subjectively and objectively offensive; 2) his gender was the cause of the harassment; 3) the conduct was severe or pervasive; and 4) that there was a basis for employer liability, because either a supervisor participated in the harassment or Defendant was negligent in discovering and/or remedying the harassment. *Id.* at 834. In order to survive the motion to dismiss, Plaintiff must plead a claim that raises his right to relief beyond a merely conceivable or speculative level. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015).

Plaintiff failed to allege facts to support his claim of gender discrimination beyond a speculative level in regards to several of the elements. First, Plaintiff did

not allege facts to support beyond speculation that the harassment was because of his gender. Second, Plaintiff did not allege facts to support beyond speculation that his work environment was subjectively and objectively offensive. Last, Plaintiff did not allege facts to support beyond speculation that the harassment was severe or pervasive. Each of these reasons will be discussed below.

### i. HARASSMENT BECAUSE OF SECOND JOB, NOT BECAUSE OF GENDER

Plaintiff did not allege that he was harassed because of his gender. Rather he alleged that his harassment was because of his second job. Plaintiff alleged that it was brought to his attention that "Ms. Bury had uttered defamatory statements about the Plaintiff's part-time job as a police officer . . . [and] Plaintiff perceived said statements from Ms. Bury as intimidating, hostile, and harassing in nature." (Doc. 1 at 7-8). Plaintiff did not allege facts to support beyond speculation that his gender was the cause of his harassment.

Plaintiff argues that he did not need to plead the "magic words" of "sex discrimination" or "hostile work environment." (Doc. 14 at 8.) Plaintiff is correct that he does not need to use any specific words to state a claim. However, in order to sufficiently state a claim, Plaintiff must allege facts that support that he was harassed *because of* a Title VII protected class, like gender. *Scott v. Int'l Servs.*, No. 15-cv-8702, 2016 U.S. Dist. LEXIS 56454, at *5 (N.D. Ill. Apr. 28, 2016) ("Alleged harassing or offensive conduct—if gender-natural—is not actionable under Title VII."). Plaintiff misunderstands the scope of Title VII's protections. Having a second job is not a Title VII protected class. Title VII does not protect against "standoffish,

19

rude, or unprofessional behavior from coworkers." *Byrd v. Wis. Dep't of Veterans Affairs*, 98 F. Supp. 3d 972, 981 (W.D. Wis. 2015) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) and *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009)). *See also Holman v. Indiana*, 211 F.3d 399, 404 (7th Cir. 2000) ("Title VII is predicated on discrimination. Given this premise, requiring disparate treatment is consistent with the statute's purpose of preventing such treatment . . . to [hold otherwise] would change Title VII into a code of workplace civility and the Supreme Court has already rejected such an interpretation" (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998))).

Plaintiff did allege the conclusory statement that "Ms. Bury's motivation for making said statements about his police job were mixed motivated on two factors 1) Ms. Bury believing that the Plaintiff's salary was too high [and] 2) sex/gender motivated." (Doc. 14 at 7). However, this is insufficient to support a claim that he was discriminated against because of his sex. Because although "because of sex" conduct need not be explicitly sexual, the harassment must still manifest a sexual character or purpose. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Because "harassment inflicted . . . regardless of sex, is not actionable." *Stokes v. John Deere Seeding Group*, No: 4:12-cv-04054-SLD-JEH, 2014 U.S. Dist. LEXIS 136694, *44 (C.D. Ill. Sept. 29, 2014) (citing *Holman*, 211 F.3d at 403). Plaintiff only alleged that Ms. Bury made "defamatory statements about the Plaintiff's police job," which does not manifest a sexual character or purpose. (Doc. 14 at 5). Furthermore, Plaintiff's allegation that Ms. Bury made these statements because of his salary and

his gender is merely a conclusory allegation. Plaintiff must offer more than "labels and conclusions" and "naked assertions devoid of factual enhancement" to sufficiently state a claim. *Iqbal*, 556 U.S. at 678. Plaintiff has failed to do so here.

### ii. WORKPLACE WAS NOT SUBJECTIVELY AND *OBJECTIVELY* HOSTILE

Plaintiff failed to allege sufficient facts to support beyond speculation that his work environment was subjectively and objectively hostile. Plaintiff never alleged what the offensive or hostile comments about his job are. Plaintiff merely alleged that he "perceived said statements from Ms. Bury as intimidating, hostile, and harassing in nature." (Doc. 1 at 8). However, those are vague and conclusory statements; without more, they do not raise his claims above speculation. *Lanton v. City of Chi.*, 2016 U.S. Dist. LEXIS 108805, at *20 (N.D. Ill. Aug. 17, 2016). Furthermore, the conclusory statements do not allow the Court to assess whether the harassment was objectively hostile, or otherwise stated, that the environment is one that a "reasonable person would find hostile or abusive." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). The harassment must be objectively hostile, because the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of the employment to implicate Title VII." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 91 (1986)).

### iii. HARASSMENT NOT ALLEGED TO BE SEVERE OR PERVASIVE

Last, Plaintiff does not allege facts to support beyond speculation that the harassment was severe or pervasive. Plaintiff has not alleged what the comments were; therefore, it is impossible for the Court to judge the severity of the comments.

However, the severity of the harassment is an issue because Ms. Bury did not make the comments about his job directly to him. (Doc. 1 at 8-9). Therefore, these comments are "second-hand harassment" and are not as severe as if the comments had been made directly to him.[2] *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998) (citing *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1144 (7th Cir. 1997)).

Furthermore, Plaintiff has not alleged facts to support beyond speculation that the harassment was pervasive. Plaintiff has alleged that Ms. Bury made a remark about his second job on or around April 17th, 2015, and again on or around July 14th, 2015 (Doc. 1 at 8-9). Allegations of two comments over the course of four months is not sufficient to support an allegation of pervasive harassment beyond speculation. *See generally Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("A recurring point in these opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"); *see also Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) ("With that in mind, we have said that relatively isolated instances of nonsevere misconduct will not support a claim of hostile environment."). Therefore, Plaintiff has failed to allege sufficient factual details to support his claims of a Title VII hostile work environment beyond a speculative level and the claim must be dismissed.

---

[2] The Court notes that Plaintiff alleged that Defendant's Employee Handbook does not require harassment to take place in the presence of the person it targets. (Doc. 14 at 15). However, Defendant's Handbook does not provide a Title VII claim of harassment; therefore, Defendant's argument is unpersuasive.

### B. COUNTS TWO THROUGH FIVE: RETALIATION CLAIMS

Plaintiff has failed to state plausible claims of retaliation. Title VII prohibits an employer from discriminating against an employee who has opposed any practice made unlawful by Title VII or has "made a charge, testified, assisted, or participated in any manner of investigation, proceedings or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). In order to plead a Title VII retaliation claim, a plaintiff must allege that he was *engaged in statutorily protected activity* and was subjected to an adverse employment action as a result of that claim. *Huri,* 804 F.3d at 833 (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013)).

There are three reasons Plaintiff has failed to state a claim of retaliation. Each is sufficient to sustain dismissal of the claims and will be discussed separately below. First, each of Plaintiff's retaliation claims fails because Plaintiff was not objecting to harassment that was protected by Title VII. Second, Plaintiff has pled himself out of court through exhibits that show his disciplinary warnings and review were not a result of his harassment complaints. Third, Plaintiff's allegations that his written disciplinary proceedings were retaliation must also be dismissed because Plaintiff failed to plead an adverse employment action.

### i. PLAINTIFF WAS NOT OBJECTING TO HARASSMENT PROTECTED BY TITLE VII

Each of Plaintiff's four retaliations claims fails because Plaintiff did not object to harassment that is protected by Title VII. In order to prove a Title VII retaliation claim, a plaintiff must "prove that he was engaged in [a Title VII] protected activity." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). A plaintiff's

23

claim is not doomed if he complained about conduct that was not actually an unlawful employment practice. *Id*. However, in order to sustain his claim, a plaintiff must have "'a sincere and *reasonable* belief that he is opposing an unlawful practice.'" *Id*. (quoting *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 706-07 (7th Cir. 2000)). That belief "must not only [be] a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be *objectively reasonable*, which means that the complaint must involve discrimination that is *prohibited by Title VII*." *Hamner*, 224 F.3d at 707 (emphasis added). Not all harassment is protected by Title VII, which protects an individual from harassment because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). "If a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable." *Hamner*, 224 F.3d at 707.

All of Plaintiff's retaliation claims arise from a singular complaint that Ms. Bury made "defamatory" comments about his second-job. Count Two arises because Plaintiff alleged that he received his first written disciplinary report in retaliation for his April 17th and 18th emails to HR about Ms. Bury's comments on his second job. (Doc. 1 at 9). Count Three arises because Plaintiff alleged that he received his second written disciplinary report in retaliation for his July 30th internal grievance and September 9th email to HR. *Id*. at 13. Counts Four and Five arise because Plaintiff alleged that he received a lower yearly performance review score and a smaller raise

because he sent the previously mentioned emails to HR, the internal grievance, and a complaint with IDHR. (Doc. 1 at 13-14).

All of Plaintiff's retaliation claims alleged that he was retaliated against for complaining that Ms. Bury was harassing him about his second job as a police officer. Even giving Plaintiff the benefit of inferring that these comments were defamatory,[3] these comments do not violate Title VII as a matter of law. *Hamner*, 224 F.3d at 707-08 (finding no retaliation claims after complaints about sexual orientation harassment because sexual orientation is not protected under Title VII).[4] The comments by Ms. Bury may have been upsetting to Plaintiff, but that does not mean that they were protected by Title VII. Contrary to what Plaintiff may believe, Title VII does not allow Plaintiff to declare an area of his life a protected class and then deem any comments about that topic "harassment" simply because he does not wish for it to be discussed. Because Plaintiff's second job is not protected by Title VII, Plaintiff did not participate in any activity that would be protected by Title VII.

---

[3] The Court cannot assess whether these comments about Plaintiff's second job were defamatory, because Plaintiff has not alleged what any of the comments were. Instead, Plaintiff has only alleged conclusory statements that Ms. Bury uttered "defamatory" comments. (Doc. 1 at 8) ("Plaintiff perceived said statements from Ms. Bury as intimidating, hostile, and harassing in nature.").

[4] The Court notes that United States Court of Appeals for the Seventh Circuit is reconsidering whether sexual orientation is protected under Title VII in *Hively v. Ivy Tech Cmty. Coll.*, No. 15-1720, 2016 U.S. App. LEXIS 20302 (7th Cir. Oct. 11, 2016) (vacating and ordering a rehearing en banc for *Hively v. Ivy Tech Cmty. Coll.*, 830 F.3d 698 (7th Cir. 2016)). Although oral arguments have been heard, no opinion has been issued yet from the en banc rehearing. However, even if the Seventh Circuit holds that sexual orientation is protected by Title VII, it does not affect *Hamner's* holding that a plaintiff must oppose harassment because of a Title VII protected class in order to state a Title VII retaliation claim. 224 F.3d at 708.

Therefore, because Plaintiff did not participate in a Title VII protected activity, he cannot state a claim for retaliation and Counts Two through Five must be dismissed.

Furthermore, Plaintiff's arguments that he believed Ms. Bury was breaking Illinois defamation law and Defendant's policies from its Employee Handbook are unpersuasive. (Doc. 14 at 5-6; Doc. 1 at 12-13). Title VII explicitly states that it only makes it illegal for an employer to retaliate if an employee has opposed an unlawful employment practice as defined by Title VII—not by state law or company policies.[5] 42 U.S.C. § 2000e-3. As a matter of law, Plaintiff's beliefs that Ms. Bury was breaking Illinois defamation law, or Defendant's own employee policies,[6] are not sufficient to state a claim of Title VII retaliation. In order to state a claim, Plaintiff must complain about harassment that is protected by Title VII; Plaintiff has failed to do so.

### ii. Plaintiff Pled Himself out of Court Because Exhibits Show his Disciplinary Warnings and Review Were Not a Result of his HR Complaints, Internal Grievance, or IDHR Claim

Additionally, Plaintiff has pled himself out of court because his disciplinary warnings and yearly review score were not a result of his HR complaints, internal grievance, or IDHR claim. In his Complaint, Plaintiff alleged that he was retaliated

---

[5] It is not before the Court to determine if Defendant violated Illinois law or its own policies. All that is before the Court is to determine whether Plaintiff has stated a claim for retaliation under Title VII.

[6] Furthermore, the Court notes that Defendant's Handbook protects against harassment that is "*because of* the employee's race, ethnicity, national origin, disability, age, gender, unfavorable military discharge, military status *or other basis which may be protected by applicable law*." (Doc. 14 at 36) (emphasis added). Defendant's Handbook only purports to protect against discrimination that is protected by anti-discrimination laws, like Title VII. It does not protect employees against any unwanted comment and it does not protect against harassment about an employee's second job, which is not a protected class under Title VII or Defendant's Handbook.

against because of his HR complaints, internal grievance, and IDHR claim. However, Plaintiff's written disciplinary warnings and his 2015 yearly review explicitly demonstrate that he was disciplined because of repeated unprofessional and inappropriate comments.

Although the court must take all well-pled allegations as true, when an exhibit incontrovertibly contradicts the allegations in the complaint, then the exhibit generally controls, even when the court is considering a motion to dismiss. *Bogie*, 705 F.3d at 609. Additionally, the court may independently examine and form its own opinions about a document, because it is not bound by the party's characterization of it. *Forrest*, 507 F.3d at 542.

Plaintiff's exhibits show that he was not disciplined as result of his complaints. Retaliation claims must plausibly show that the adverse employment action taken against the plaintiff was based on a retaliatory motive. *Lord*, 839 F.3d at 563 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). Therefore, Plaintiff was required to plead that the retaliatory motive caused the Plaintiff's disciplinary warnings and lower yearly review score. Here, Plaintiff's exhibits obviate any allegation that Defendant had a retaliatory motive because they conclusively show that he was not disciplined because of a retaliatory motive. The Court will examine the "but-for" causation of each of Plaintiff's two written disciplinary warnings and his yearly review score separately and show that Plaintiff has pled himself out of court on all his retaliation claims.

1. **THE BUT-FOR CAUSE OF PLAINTIFF'S FIRST WRITTEN DISCIPLINARY WARNING (COUNT TWO)**

Plaintiff has failed to allege facts to support that he was disciplined *because of* his email to HR. Plaintiff has pled himself out of court by pleading facts that show he was not disciplined for his April 17th and 18th emails to HR.

Plaintiff received his first disciplinary warning for a "pattern of contentious, unprofessional conduct." (Doc. 13-1 at 42). Plaintiff asserted that he was retaliated against for his April 17th and 18th emails he sent to HR, and others, complaining about Ms. Bury's comments about his second job. Specifically on April 17th, Plaintiff sent an email to Ms. Bury and several coworkers that said: "No further comments about my other job. I have not yet seen a Bradley law, rule, policy, procedure, ordinance, code, etc. that says we cannot work a second job. Any further comments from anyone about my other job will be referred to Human Resources and the Provost." (Doc. 1 at 28). Additionally, on April 18th, Plaintiff emailed HR and reported that "I made a statement to Sandy [Bury] . . . that I was not going to tolerate any "grief" about my second job until I see an official policy, etc. that full time BU employees are not allowed to have a second job. Does such policy exist?" *Id.* at 29-30. Plaintiff claimed that after he sent these that Ms. Bury "began building her case" to discipline him as retaliation. (Doc. 14 at 10).

However, the written warning and accompanying documentation clearly indicate that Plaintiff was receiving the warning because of ongoing unprofessional and inappropriate behavior. The written warning indicated that Plaintiff had been warned about his inappropriate behavior as early as September 2014. (Doc. 13-1 at

42). The written disciplinary warning also included five documented instances of inappropriate or unprofessional behavior by plaintiff. These sufficiently establish that Plaintiff was disciplined for repeated inappropriate and unprofessional conduct.

First, on April 17th, Plaintiff sent the following email to coworkers:

"No, I didn't mean to include Shayne [in his previous email], but I don't care if he gets upset about it. *All the shit he pulled* before upset me, so he can just get over it. He can sue me if he wants to and hire 8 lawyers and spend $500,000 if that's what he wants to do. I will fight him without a lawyer and I will win. *All the crap I have been through* the past years has helped me in that regard. *Shayne's threats of legal action don't intimidate me, nor do Rick's Marine like psychological tactics*. Yes, we are trying to repair the relations with Shayne. He and Rick have a part in that too. How they handled this was uncalled for, *I apologize to nobody*, and think the way I handled it was necessary to establish a precedence for later. Especially with Rick. *Rick is very insecure right now and is going to be flexing extra hard to try and make himself feel important and needed*. I didn't need him the entire 3 months he was gone. If he wants to act like he does to others that is fine, but I will not put up with it."

*Id*. (emphasis added). Mr. Scuffham, Plaintiff's immediate supervisor, responded that Plaintiff needed to control his emotions because "*it's not professional* to yell, threaten, or slam the phone." *Id*. (emphasis added). Mr. Scuffham also warned "if this behavior continues, *I will have no choice but to write you up*." *Id*. (emphasis added).

Just over two weeks later, on May 2nd, Plaintiff sent an email to Ms. Bury threatening to hang up on other IRT coworker because they have a "really crappy attitude" and "got snotty" with him. *Id*. at 47. Ms. Bury responded that Plaintiff was expected to "*be courteous and respectful* on the phone, in person, and in email communications." *Id*. at 48. (emphasis added)

29

On June 2nd, Plaintiff engaged in a series of contentious emails with Mr. Scuffham, his immediate superior. *Id*. at 51-53. It began with an email from Plaintiff complaining to Mr. Scuffham about issues he was dealing with coworkers. In his email, Plaintiff wrote: "rather than just bitch 'I can't get on the network' like was done in yesterday's Monday morning bitch fest which I'm about ready to quit going to." *Id*. at 52-53. Mr. Scuffham immediately warned Plaintiff saying "*You need to tone down the attitude*. Some people don't have the expertise or time to troubleshoot network problems." *Id*. at 52. (emphasis added). Plaintiff did not follow the warning and wrote: "I do not appreciate how I was treated in yesterday's meeting, and next time that happens I will just walk out." *Id*. Again, Mr. Scuffham warned Plaintiff that his response was not appropriate and that he should be calmer. *Id*.

Plaintiff continued to complain through several emails and claimed that there were double standards. *Id*. at 51-52. Mr. Scuffham again warned him that "[t]here are no double standards. Everyone is expected to do their job, help each other out, and *be professional* while doing it." *Id*. at 51. (emphasis added). Despite repeated warnings, Plaintiff continued to argue with Mr. Scuffham. *Id*. Mr. Scuffham's final email stated "[n]ext time I expect you, like everyone is expected to, to listen when someone says there is a problem, instead of arguing. . . . If there is any of this extra arguing, etc., *I will have no choice but to write you up*." *Id*. (emphasis added).

On June 11th, Ms. Bury sent Plaintiff an email asking him to remove the pictograph of "No Bullshit" from his office. *Id*. at 50. She warned him that such a sign was "inappropriate and unprofessional."

30

Finally, on July 15th, Plaintiff sent the following email to coworkers:

> "What?? I thought you network people had control of the entire internet
> and could fix any issue anywhere in world in the snap of a finger so long
> as I complained loud enough, told you how important I am, and made a
> big enough fuss? So what, you saying you can't?? It's an emergency I
> have to order my winter boots on Amazon TODAY!! Curse you!!!"

*Id*. at 54. The email was sent at 10:39 AM. Plaintiff received his written warning later

that day. (Doc. 1 at 9).

Plaintiff argued that there is enough temporal proximity to show that Ms. Bury

was retaliating against him for his April 17th and 18th emails. To support this claim,

Plaintiff cited several cases from the United States Court of Appeals for the Third

and Sixth Circuits. However, this Court is bound by the precedent of the United

States Court of Appeals for the Seventh Circuit, which holds that "temporal proximity

between an employee's protected activity and an adverse employment action is rarely

sufficient to show that the former caused the latter." *O'Leary v. Accretive Health Inc.*,

657 F.3d 625, 635 (7th Cir. 2011) (citing *Leitgen v. Franciscan Skemp Healthcare,

Inc.*, 630 F.3d 668, 675 (7th Cir. 2011)). Plaintiff's temporal proximity argument is

weakened for two more reasons. First, there are three months between his April 17th

and 18th emails and his July 15th disciplinary warning, where he is repeatedly

reprimanded for other inappropriate behavior. Second, Plaintiff sent an

unprofessional email to coworkers the morning of July 15th, after which he was

disciplined. Therefore, temporal proximity would indicate that he was reprimanded

because of his July 15th email, not because of his April 17th and 18th emails.

The written documentation clearly indicates that Plaintiff was disciplined for ongoing unprofessional and inappropriate behavior. Because Plaintiff's exhibit contradicts Plaintiff's assertions, the exhibit controls. *Bogie*, 705 F.3d at 609. Therefore, Plaintiff has pled himself out of court because the exhibit shows that Plaintiff was not reprimanded solely for his April 17th and 18th emails, but rather for his series of unprofessional and inappropriate comments.

Additionally, although Plaintiff claimed that Ms. Bury was "building a case" against him, the exhibits clearly show that he was being reprimanded for his own actions. All of the warnings he received about his behavior came after he made an inappropriate, unprofessional, or threatening comment. Even the email asking him to take down the pictograph of "No Bullshit" would not have occurred if he had not put it on his wall. If Plaintiff had not sent the inappropriate and threatening emails, he would not have received the multiple warnings.

Furthermore, the fact that Plaintiff's immediate supervisor, Mr. Scuffham, did not want to discipline him on July 15th does not detract from the multitude of inappropriate, unprofessional, or threatening comments Plaintiff had engaged in between April 17th and July 15th. There is sufficient evidence to indicated that Plaintiff was disciplined because of his inappropriate actions, including the final inappropriate email sent on July 15th. Plaintiff insisted that Mr. Scuffham's disagreement with the disciplinary warning proves that it was retaliation. However, Mr. Scuffham's disagreement with the disciplinary warning merely indicates a difference in opinion between managers. It does not provide evidence that he was

32

punished because of his April 17th and 18th emails; rather, it shows that Plaintiff

was punished for his repeated unprofessional, inappropriate, or combative emails.

## 2. THE BUT-FOR CAUSE OF PLAINTIFF'S SECOND WRITTEN DISCIPLINARY WARNING (COUNT THREE)

Plaintiff has failed to allege facts to support that he was disciplined *because of*

his July 30th internal grievance or because of the September 9th email in which he

included HR. Plaintiff alleged that his second disciplinary warning was the result of

him filing an internal grievance against Ms. Bury on July 30th and because he

included HR on his September 9th email about Ms. Bury. (Doc. 1 at 19). However, the

second disciplinary warning explicitly stated that he was being warned because of

the "unprofessional and adversarial comments" he wrote in his September 9th email.

(Doc. 13-1 at 80). Because the exhibit contradicts Plaintiff's assertions, the exhibit

controls. *Bogie*, 705 F.3d at 609.

On September 9th, Plaintiff sent the following email:

"Fellas, let's play this one smarter than we did in the past, *let's not let our management play these head games with us* anymore like we used to… *It's a game, a trap,* lets' not fall for it.. Then end up getting us all pissed off at each other and we need to work together without that drama. *We all know that the problem is from a central source,* and it's none of us. We know Sandy [Bury] tells one person one thing, and another another. And she generally does it verbally so there is no record, as she did this time.. *Let's all agree that we know where the problem lies now,* and aren't going to let it get to any of us. It's not worth it. BTW coping [HR] on this as I do anything to do with Sandy [Bury] anymore."

*Id*. at 79. (emphasis added). Mr. Scuffham responded to the email and told him to

"stop it. You are reading maliciousness or paranoia into this that just isn't there. It's

unprofessional to send a message like this." (Doc. 13-1 at 86). Then, on September

11th, Mr. Scuffham issued Plaintiff's second written disciplinary warning because of the "unprofessional and adversarial comments which [he] wrote on September 9th." *Id*. at 80.

Plaintiff argued that he was retaliated against because he included HR in his September 9th email and because he filed the internal grievance against Ms. Bury on July 30th. (Doc. 1 at 19). However, Plaintiff's second disciplinary warning explicitly contradicts that and states that he was being disciplined because of the tone and accusations in the email.

Additionally, Plaintiff's argument that the timing of the email and content of the email prove a temporal affect is unpersuasive. (Doc. 14 at 19-20). For support, Plaintiff cites to *Hiter v. Multiband EC Inc.*, an unpublished case from Magistrate Judge Gorman of this Court. No. 11-1282, 2013 WL 269138 (C.D. Ill. Jan. 24, 2013). In *Hiter*, the plaintiff was the manager of a warehouse and had been experiencing disciplinary issues with a female subordinate. *Id*. at *3. On February 1st, plaintiff received an email from a male subordinate that complained that the plaintiff's female subordinate made lewd and sexual comments to harass him. *Id*. Plaintiff forwarded this email to her superior without comment. *Id*. On February 9th, plaintiff was terminated. *Id*. at *4. Plaintiff brought a claim of retaliation against her employer. *Id*. Defendant argued that forwarding the email, without doing more, was insufficient to be participating in a protected activity. *Id*. at *6. Judge Gorman found that a jury could find that by forwarding the email plaintiff was reporting the female subordinate's sexual harassment. *Id*. at *7. Therefore, Judge Gorman found that

34

"given that timing [that she was fired 8 days after forwarding the email], as well as the content of the email," that the Court could not conclude, as a matter of law, that plaintiff did not participate in protected activity. *Id*.

However, Plaintiff's case is significantly factually distinguishable from *Hiter*. First, Plaintiff's September 9th email was not protected activity. (Doc. 13-1 at 79). The email complained about a managerial decision Ms. Bury made; it did not complain that Ms. Bury was harassing him because of a protected trait. *Id*. Just because an individual includes HR on an email, does not make it a protected activity. However, the email in *Hiter* was protected activity because it detailed a complaint of sexual harassment. 2013 WL 269138, at *6. Another difference is that in *Hiter*, the plaintiff merely forwarded an email from a male subordinate complaining of sexual harassment by a female coworker. *Id*. However, in Plaintiff's email, he makes accusatory, adversarial, and unprofessional comments towards Ms. Bury. (Doc. 13-1 at 79). Therefore, the Court finds that *Hiter* is sufficiently distinguishable and that it is inapplicable for establishing temporal proximity in Plaintiff's case.

### 3. THE BUT-FOR CAUSE OF PLAINTIFF'S YEARLY REVIEW AND RAISE (COUNTS FOUR AND FIVE)

Plaintiff failed to state a claim for retaliation because his 2015 review explicitly details the reasons for his lower yearly review score; therefore, Plaintiff has pled himself out of Court. Plaintiff claimed that his 2015 review was lowered "because of the past incidents with Sandy [Bury]." (Doc. 1 at 13). He also claimed that Ms. Bury did a special review of his yearly review, which "resulted in the Plaintiff receiving a yearly performance evaluation that was scored lower than Mr. Scuffham, the

Plaintiff's immediate supervisor, otherwise would have scored Plaintiff for that particular year." *Id.* at 20. Plaintiff argued that this review caused him to receive the "lowest percentage raise of all Computing Services employees." *Id.* at 14.

However, Plaintiff's 2015 review explicitly contradicts Plaintiff's allegations. Mr. Scuffham stated that he wrote Plaintiff's review. (Doc. 1 at 38). Mr. Scuffham also stated that Ms. Bury made no changes to it; rather, she merely reviewed it before it was given to him. *Id.* ("I told [Plaintiff] that I wrote the review, and all of the words were mine."). This contradicts Plaintiff's allegations that Ms. Bury caused him to have a lower score or that Mr. Scuffham would have scored him differently. Because the exhibit contradicts allegations by the Plaintiff, the exhibit controls. *Bogie*, 705 F.3d at 609. To the extent that Plaintiff argued that he received a lower pay raise because of his interactions with Ms. Bury, Mr. Scuffham's review also contradicts that. The review explains sufficient reasons for Plaintiff's score and Mr. Scuffham's response makes it clear that he alone wrote the review. Therefore, Plaintiff has pled himself out of court and cannot state a claim for retaliation.

### iii. PLAINTIFF FAILED TO STATE AN "ADVERSE EMPLOYMENT ACTION"

Plaintiff has failed to state sufficient facts to allege that he experienced an adverse employment action. In order to be an "adverse employment action," the action must "materially alter the terms and conditions of employment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (citing *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001)). "Negative evaluation[s], written warnings, and placement on 'proof status' are putatively disciplinary measures, [and] none result[] in tangible

36

job consequences," therefore they are not actionable as adverse employment actions under Title VII. *Id.* (quotation omitted); *see also Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (holding that negative performance evaluations were not actionable adverse employment actions under Title VII); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001) (holding that neither unfavorable performance evaluations or oral or written reprimands were actionable adverse employment actions); *Balderrama v. Kraft Foods N. Am., Inc.*, 307 F. Supp. 2d 1012, 1014 (N.D. Ill. 2004) ("However, the law is clear that a warning or performance evaluation does not amount to an adverse employment action.").

Plaintiff has failed to plead an adverse employment action sufficient to sustain a retaliation claim. Plaintiff's Counts Two and Three both alleged that Plaintiff received written disciplinary reports. However, Plaintiff alleged no other tangible job consequence that accompanied the negative reviews. Although adverse employment actions can occur beyond quantifiable losses, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)). As the United States Court of Appeals for the Seventh Circuit explains, a tangible job consequence is required with a negative review or disciplinary warning, because to consider solely a negative review or disciplinary warning as materially adverse, would "be sending a message to employers that even the slightest

nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal lawsuit." *Sweeney v. W.*, 149 F.3d 550, 557 (7th Cir. 1998). The Seventh Circuit was disinclined to allow that because it would discourage employers from documenting performance difficulties. *Id*. Plaintiff's written disciplinary reports are nothing more than a chip-on-his-shoulder. They were accompanied with no change in the material terms and conditions of his employment. Without more, the Court cannot find that these actions are adverse employment actions sufficient of sustaining a Title VII retaliation claim beyond speculation.

As for Plaintiff's allegations that his performance review and subsequent pay raise are adverse employment actions, the Court notes that in limited circumstances a decreased raise could qualify as an adverse employment action. *See Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004) (finding the denial of a raise could be a materially adverse action if the raise "would have been an expected element of the employee's salary and its denial cuts the salary in real terms"); *Hildbrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1030-31 (7th Cir. 2003) (finding a Title VII disparate pay claim when plaintiff received a less favorable pay raise than similarly situated employees who were not part of plaintiff's protected class). Although neither of these situations appear to be applicable to Plaintiff's situation, the Court refrains from assessing whether Counts Four and Five present an "adverse employment action" because the Court's analysis in §§ III.B.i and III.B.ii.3 is sufficient to support dismissal of Plaintiff's retaliation claims in Counts Four and Five.

### C. COUNT SIX: GENDER DISCRIMINATION

Plaintiff has failed to plead facts sufficient to establish a Title VII gender discrimination claim. Title VII makes it unlawful for an employer to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to state a claim for gender discrimination, Plaintiff must allege that "the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his gender]." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (citing *Luevano*, 722 F.3d at 1028).

Plaintiff has failed to plead an adverse employment action; therefore, he has not stated a claim of gender discrimination. An adverse employment action has been defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761)). Courts have found adverse employment actions in the following situations: an employee's compensation or benefits are diminished; an employee is fired; where an employee is nominally transferred or experiences a change in his job that significantly reduces his career prospects; or where his work conditions are changed so as to subject him to a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Nichols v. S. Ill.*

*University-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (quotations omitted). None of these are applicable here. Furthermore, the changed conditions must objectively—not subjectively—create a hardship, such as moving the employee's desk into a closet. *Herrnreiter*, 315 F.3d at 744-45 (citations omitted).

Plaintiff's is unhappy with the results of his internal grievance and not being offered an "internal restraining order" by HR. However, an "employee's unhappiness with [his] employer's conduct or decision is insufficient to support a claim under Title VII." *De la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008); *see also Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("Not everything that makes an employee unhappy is an actionable adverse action."). Plaintiff does not allege facts sufficient to plead a claim that is objectively "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Nichols*, 510 F.3d at 780. Therefore, Plaintiff has failed to state a claim of gender discrimination.

## IV. CONCLUSION

Plaintiff has failed to state a claim upon which relief may be granted; therefore, Defendant's Motion to Dismiss (Doc. 12) is GRANTED. Because Plaintiff cannot plead a claim of retaliation, as a matter of law, Plaintiff's Counts Two through Five are DISMISSED WITH PREJUDICE. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile") (quoting *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994))). Because Plaintiff could cure the deficiencies of his hostile work

environment and gender discrimination claims, Plaintiff's Count's One and Six are DISMISSED WITHOUT PREJUDICE. Plaintiff will have twenty-one (21) days to file an Amended Complaint that relates to these claims[7] and that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. If he fails to do so, the case will be dismissed in its entirety.

Entered this _8th_ day of February, 2017.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge

---

[7] The Court notes that Plaintiff has a tendency to include unnecessary facts and information in his pleadings, like his issues with a different manager, Chuck Ruch. (Doc. 1 at 6-7). Should he chose to refile, the Court warns Plaintiff to avoid included unnecessary information and to include only facts pertinent to his claims.

41