# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| MICHAEL S. WHITLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01223-JBM-JEH |
| | ) | |
| BRADLEY UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER & OPINION

This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 18). Plaintiff's First Amended Complaint (Doc. 16) alleges claims of sexual harassment and gender discrimination, in violation of 42 U.S.C. § 2000e-2(a)(1). For the reasons discussed below, Defendant's Motion to Dismiss is granted and the case is terminated.

This is a case of a disgruntled employee, who has had many disagreements with his manager and has taken issue with her remarks about his second job, as a parks department police officer. This, however, is not a case of unlawful discrimination. Title VII is *not* a general civility code to be used by anyone who is upset with his coworker or boss. Title VII is meant to protect individuals from discrimination based on protected immutable traits. While it is clear that Plaintiff and his manager have a poor working relationship and many disagreements, Plaintiff simply has not alleged any factual allegations to support his claims of gender discrimination beyond speculation. Rather, Plaintiff offers only conclusory

statements about gender discrimination and attempts to support his speculations with factual allegations unrelated to gender. Therefore, Plaintiff simply has not sufficiently pled his claims and they must be dismissed.

## I. BACKGROUND[1]

The allegations in this case arise from Plaintiff's employment with Defendant Bradley University. Around July 30, 2007, Plaintiff began working for Defendant as a Senior Network Analyst, within the Information Resources and Technology ("IRT") group for the Computing Services Department. (Doc. 16 at 3). Plaintiff reports directly to David Scuffham, the Director of System's Integration and Security. (Doc. 16 at 3). Mr. Scuffham reports directly to Sandra Bury, the Executive Director of Computing Services and Interim Chief Information Officer/Associate Provost. (Doc. 16 at 3).

Plaintiff's Complaint arises from his interactions with Ms. Bury. It is apparent to the Court that Plaintiff and Ms. Bury have had a very tenuous and contentious relationship over their nearly ten year work relationship. (*See* Doc. 16 at 5-6). This includes issues like Ms. Bury's alleged intentional scolding of Plaintiff "for network problems of which he had nothing to do with" (Doc. 16 at 6) and Ms. Bury's denial of Plaintiff's request for an additional employee (Doc. 16 at 6).

However, the primary trigger for Plaintiff's grievances and this Amended Complaint arises from some comments that Ms. Bury made about Plaintiff's second job around April 2015. Plaintiff alleges that around April 17, 2015, Ms. Bury made

---

[1] The Court will address the factual allegations pertaining to each claim in greater detail as the Court analyzes the claim. The Background section serves as a broad explanation of the events and the procedural history of the case.

comments about Plaintiff's second job to Mr. Scuffham, Plaintiff's direct supervisor. (Doc. 16 at 9-10). Plaintiff alleges that Ms. Bury said that it was unfair that Plaintiff had a second job because it would interfere with his duties in his employment for Defendant and that she discussed implementing a formal "on call" rotation for his department. (Doc. 16 at 9-10). Plaintiff then emailed Ms. Bury to tell her to stop making comments about his other job because it was not against any of Defendant's policies. (Doc. 16 at 11). Additionally, Plaintiff reported these comments to Defendant's Director of Human Resources ("HR"). (Doc. 16 at 11).

On July 15, 2015, Plaintiff requested an "internal restraining order" and a transfer of his office from Human Resources ("HR"). (Doc. 16 at 39). In denying Plaintiff's request to transfer offices, HR informed Plaintiff that "[t]here is no such thing as an 'internal restraining order.' And if there was, [Ms. Bury's] behavior would not warrant use of such." (Doc. 16 at 41).

On July 30, 2015, Plaintiff filed an internal grievance with Defendant based on Ms. Bury's behavior. (Doc. 16 at 41). Plaintiff's grievance was denied after an ad hoc committee advised Defendant's Interim Provost and Vice President for Academic Affairs that they "unanimously concluded that [Plaintiff's] grievance does not merit a formal review." (Doc. 16 at 41). Defendant's Interim Provost concurred with the committee's decision. (Doc. 16 at 41). Furthermore, Defendant's Interim Provost stated:

> "Your claims reflect management actions or decisions with which you do not agree and, perhaps, personality or other conflicts within Information Resources and Technology. However, your characterizations and conclusions are not supported by the materials you provided.

It is expected that all Bradley employees will conduct themselves in a courteous and professional manner and work cooperatively. Your doing so will help avoid issues such as those you perceived and detailed in your grievance from arising in the future."

(Doc. 16 at 41).

On October 26, 2015, Plaintiff brought two claims of retaliation to the Illinois Department of Human Rights ("IDHR"). (Doc. 13-1 at 9-13).[2] On December 3, 2015, IDHR denied Plaintiff's claims and informed Plaintiff that: "You have not claimed that you were discriminated against because of a protected basis. . . ." (Doc. 13-1 at 3).

On April 22, 2016, Plaintiff brought a claim of gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 16 at 20). The EEOC closed Plaintiff's claims on May 24, 2016, finding that it was "unable to conclude that the information obtained establishes violations of the statutes" and issuing Plaintiff a Notice of his Right to Sue. (Doc. 16 at 21).

On June 20, 2016, Plaintiff filed his original Complaint in federal court. (Doc. 1). Plaintiff brought one claim of hostile workplace environment, four claims of retaliation, and one claim of gender discrimination. (Doc. 1). On August 22, 2016,

---

[2] The Court takes judicial notice of Plaintiff's original Complaint (Doc. 1), the exhibits attached to Plaintiff's original Complaint (Doc. 1), the exhibits attached to Defendant's first Motion to Dismiss (Docs. 13-1, 13-2, 13-3), and the Court's first Order granting dismissal. (Doc. 15). *See G.E. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (collecting cases explaining that a district court may take judicial notice of matters of public record during a motion to dismiss); *see also Olson v. Bemis Co.*, 800 F.3d 296, 305 (7th Cir. 2015) (upholding a district court's judicial notice of its previous order and explaining that "[w]e see no reason why the court should have feigned ignorance of its own decision in *Olson I*.").

Defendant filed a Motion to Dismiss all of Plaintiff's claims for failing to state a claim upon which relief could be given. (Docs. 12, 13).

On February 8, 2017, the Court granted Defendant's Motion to Dismiss. (Doc. 15). The Court found that Plaintiff had failed to state a claim for any of his six claims. (Doc. 15 at 17-18). The Court found that Plaintiff had failed to state sufficient factual details to support a claim of hostile work environment or a claim of Title VII gender discrimination beyond a speculative level. (Doc. 15 at 18, 39). The Court found that Plaintiff had failed to state a retaliation claim as a matter of law. (Doc. 15 at 23). Therefore, the Court dismissed all six claims. (Doc. 15 at 40-41). However, the Court allowed Plaintiff an opportunity to cure his deficiencies and file amended claims of hostile work environment and Title VII gender discrimination. (Doc. 15 at 40-41).

On February 23, 2017, Plaintiff filed this Amended Complaint. (Doc. 16). Plaintiff brings forth two claims. First, Plaintiff alleges that Ms. Bury has created a hostile work environment. Second, Plaintiff alleges that Ms. Bury discriminated against him based on his gender. The Court will summarize any further factual allegations pertaining to each claim during its analysis of the claim.

On March 9, 2017, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. (Docs. 18, 19). Defendant alleges that Plaintiff has failed to plead sufficient facts to support a hostile work environment claim beyond speculation. (Doc. 19 at 3). Defendant alleges that Plaintiff failed to cure the deficiencies of his Title VII discrimination claim and that Plaintiff failed to allege an adverse employment action. (Doc. 19 at 7). Plaintiff has

responded to the Motion to Dismiss and the matter is fully briefed.[3] (Doc 21). Each issue will now be addressed in turn.

## II. LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must *"plausibly suggest that the plaintiff has a right to relief, <u>raising that possibility above a 'speculative level.'</u>" EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added). The plausibility standard requires enough facts to "present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404

---

[3] The Court notes that in Plaintiff's Response, he spends over four pages discusses Defendant's grievance procedure and the errors Plaintiff believes Defendant made thoroughout that process. (Doc. 21 at 6-10). For example, Plaintiff asserts that "[i]nstead of doing anything one might expect a Director of Human Resources to do when an employee of one gender has an issue that is so serious that he asks for an 'internal restraining order' against the supervisor of another gender, Ms. Peplow simply denied the said request and took no further action to try and help the Plaintiff." (Doc. 21 at 6). To the extent that Plaintiff is arguing that Defendant violated his due process in following its grievance procedure, that argument has been waived. *See Kubsch v. Ind. State Police*, No. 2:10-cv-495-JTM, 2014 U.S. Dist. LEXIS 180270, at *23 (N.D. Ind. Nov. 3, 2014) ("Additionally, arguments raised for the first time in a reply brief are generally deemed waived.") (citing *Holman v. Indiana*, 211 F.3d 399, 405 n.5 (7th Cir. 2000)).

(7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In considering a Rule 12(b)(6) motion to dismiss, the Court may consider any exhibits that are attached to the pleading, because they are considered part of the pleading. Fed. R. Civ. P. 10(c). Additionally, the Court may consider any documents attached to the motion to dismiss, if they are referred to in the complaint and are central to the complaint. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

Although the court must take all well-pled allegations as true, when an exhibit incontrovertibly contradicts the allegations in the complaint, then the exhibit generally controls, even when the court is considering a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Additionally, the court may independently examine and form its own opinions about a document, because it is not bound by the party's characterization of it. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

There are two ways a plaintiff can find his or her case dismissed under a Rule 12(b)(6) motion to dismiss. The first is if the plaintiff did not allege enough facts to state a claim that would be plausible on its face. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially plausible, a complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The second is if he or she pled facts that show he or she has no legal claim. *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011). This includes not only the

facts alleged within the complaint, but also the facts from documents that were incorporated into the pleadings. *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992). If the plaintiff voluntarily provides unnecessary facts in his or her complaint, those facts may be used to show that the plaintiff is not entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (citations omitted).

## III.   DISCUSSION

Plaintiff has failed to sufficiently plead either his hostile work environment claim or his claims of Title VII gender discrimination. Each claim will be examined separately.

### A.  PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff has failed to sufficiently plead a claim of hostile work environment for three reasons. First, Plaintiff has failed to plead sufficient factual allegations beyond speculation that the discrimination he faced was because of his gender and not because of a non-protected trait. Second, Plaintiff has failed to plead sufficient factual allegations beyond speculation that the discrimination was objectively hostile. Lastly, Plaintiff has failed to plead sufficient factual allegations beyond speculation that the discrimination was severe or pervasive. Therefore, Plaintiff has failed to state a claim for a hostile work environment beyond pure speculation.

### i.   HOSTILE WORK ENVIRONMENT CLAIM FACTUAL BACKGROUND

Plaintiff alleges that Ms. Bury has created a hostile work environment. Plaintiff identifies six types of allegations in his hostile work environment claim.[4]

---

[4] Although Plaintiff was warned by the Court not to include random facts in an Amended Complaint, Plaintiff's allegations are still full of disjointed accusations, scattered with a few factual allegations. The Court will do its best to sort through

First, Plaintiff alleges, generically, that Ms. Bury is hostile towards males and that more male employees complain about her than female employees. (Doc. 16 at 5-6). Second, Plaintiff alleges that Ms. Bury has a problem with the amount of his salary and has made comments to his coworkers about how much he makes.[5] (Doc. 16 at 5). Third, Plaintiff accuses Ms. Bury of "scolding" him for incorrectly performing his work duties. (Doc. 16 at 6). Fourth, Plaintiff accuses Ms. Bury of denying his team's request to hire another person while allowing a female coworker to hire another employee. (Doc. 16 at 7). Fifth, Plaintiff accuses Ms. Bury of slamming her office door once after speaking with him. (Doc. 16 at 7).

Lastly, Plaintiff accuses Ms. Bury of making defamatory comments about his part-time job as a park officer. (Doc. 16 at 9-10). In particular, Plaintiff alleges that "Ms. Bury made comments to Mr. Scuffham on multiple occasions that the Plaintiff having a second job 'on the weekends' was not 'fair' because it would interfere with Plaintiff's duties at Bradley." (Doc. 16 at 10). Plaintiff also alleges that "Ms. Bury

---

these claims; however, it is not the Court's responsibility to search through the pleadings to piece together a sustainable allegation on behalf of a *pro se* litigant. *See Panko v. United States*, No. 86-C-009, 1987 U.S. Dist. LEXIS 4201, at *2 (N.D. Ill. May 21, 1987) ("[W]e decline to search Plaintiff's pleadings for every conceivable legal theory which may help him recover. It is the responsibility of every litigant, even *pro se* litigants, to inform the court of the legal theories on which he or she relies.").

[5] Plaintiff also alleges that Ms. Bury altered his annual employment evaluation to give him a lower score than his immediate supervisor had given him. The court rejected this argument from Plaintiff's original Complaint. (Doc. 15 at 26-27). In an exhibit attached to the Complaint by Plaintiff, Plaintiff's supervisor explicitly states that he wrote the review and that Ms. Bury did not alter it. (Doc. 1 at 38). *Bogie v. Rosenberg*, 705 F.3d at 609 (explaining that when an exhibit incontrovertibly contradicts the allegations in the complaint, then the exhibit generally controls, even when the court is considering a motion to dismiss). Plaintiff cannot reargue this rejected argument.

made comments to Mr. Scuffham on multiple occasions that she might implement a formal 'on call' rotation even though Computing Services had not had one for many years prior thereto." (Doc. 16 at 10).

Plaintiff complains that these comments were "hostile because they had to do with a personal subject matter . . . [that] is a very sensitive area to the Plaintiff personally" and that they were "intimidating because an on call rotation would interfere with Plaintiff's ability to work at both Bradley and his part-time police job." (Doc. 16 at 10). Plaintiff also complains that these comments were hostile, harmful, and illegal in Illinois as "defamation per se." (Doc. 16 at 10). However, outside from the generic comments about Plaintiff's second job being unfair and implementing an "on call" system, Plaintiff alleges no other specific statements that Ms. Bury has made.

### ii.  HOSTILE WORK ENVIRONMENT LEGAL STANDARDS

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Typically, a complaint that alleges harassment is a complaint describing a hostile work environment. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015).

In order to establish a hostile work environment, Plaintiff must allege that: 1) he was subjected to *objective* and subjective harassment; 2) the harassment was due to his gender; 3) the harassment was so severe and pervasive that it altered the

conditions of his employment; and 4) that there was a basis for employer liability due to the supervisor participating in the harassment or Defendant's negligence in discovering and/or remedying the harassment of Plaintiff. *Huri*, 804 F.3d at 834. To survive a motion to dismiss, Plaintiff must make a claim for relief that is plausible rather than conceivable or speculative. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015).

Plaintiff has failed to allege facts to support his claim of gender discrimination beyond a speculative level in regards to several of the elements. First, Plaintiff did not allege facts to support beyond speculation that the harassment was because of his gender. Second, Plaintiff did not allege facts to support beyond speculation that the harassment was severe or pervasive. Last, Plaintiff did not allege facts to support beyond speculation that his work environment was objectively offensive. Each of these reasons will be discussed below.

### iii.    HARASSMENT WAS NOT *BECAUSE OF* GENDER

Plaintiff did not allege facts that he was harassed because of his gender sufficient to raise his claim beyond pure speculation. Rather, Plaintiff's primary complaint of harassment revolves around comments made about his second job, his salary, or his work performance—none of which involved comments about his gender. *Scott v. Int'l Servs.*, No. 15-cv-8702, 2016 U.S. Dist. LEXIS 56454, at *5 (N.D. Ill. Apr. 28, 2016) ("Alleged harassing or offensive conduct—if gender-natural—is not actionable under Title VII."). Therefore, Plaintiff's factual allegations support a claim of harassment about traits that were not his gender and are not protected by Title VII. Plaintiff alleges no factual allegations that his harassment was *because of* his

gender; therefore, Plaintiff has alleged no facts to support his claim of a hostile work environment because of his gender beyond speculation.

Title VII does not protect against "standoffish, rude, or unprofessional behavior from coworkers." *Byrd v. Wis. Dep't of Veterans Affairs*, 98 F. Supp. 3d 972, 981 (W.D. Wis. 2015) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) and *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009)). *See also Holman*, 211 F.3d at 404 ("Title VII is predicated on discrimination. Given this premise, requiring disparate treatment is consistent with the statute's purpose of preventing such treatment . . . to [hold otherwise] would change Title VII into a code of workplace civility and the Supreme Court has already rejected such an interpretation" (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998))).

Plaintiff misunderstands the scope of Title VII's protections. Having a second job is not a Title VII protected trait. Plaintiff was informed of this multiple times. The Illinois Department of Human Rights informed Plaintiff that his allegations did not show discrimination because of a protected trait. (Doc. 13-1 at 3). Additionally, this Court informed him that "[h]aving a second job is not a Title VII protected class." (Doc. 15 at 19). The Court granted him leave to file a complaint that articulated discrimination based on a protected trait and, again, Plaintiff complained that Ms. Bury made comments about his second job that he perceived as hostile, intimidating, offensive, illegal, harmful, and extra concerning. Two and a half pages of his Amended Complaint pertain to these comments. (Doc. 16 at 9-11). Therefore, it is clear that Plaintiff still does not understand that comments about his second job are not a Title VII protected trait. While Plaintiff may not like the comments and may be upset by

them, Title VII is not a general civility code that employees can use when a coworker has hurt their feelings. In order to bring a Title VII discrimination claim, Plaintiff must have been discriminated based on a protected trait and *Plaintiff's second job, as a parks department police officer, is not a protected trait under Title VII.*

Plaintiff's references to his gender come as conclusory allegations without factual allegations. Plaintiff alleges that "[f]rom on/around the fall of 2007 to April 2015, Ms. Bury intentionally and pervasively harassed the Plaintiff because of his gender of male which created an ongoing and unpredictable working environment for the Plaintiff that was offensive, hostile, and unwelcome." (Doc. 16 at 6). However, Plaintiff's factual allegations to support this accusation are that: 1) Ms. Bury made a comment about his salary to one of his coworkers, 2) Ms. Bury scolded him about his work performance twice, 3) Ms. Bury denied his request for an additional employee, and that 4) Ms. Bury once slammed her office door after a conversation with him. (Doc. 16 at 6).

Although these examples may have been deeply unpleasant to Plaintiff, Title VII does not protect against any and all harassment, rather it must be because of Plaintiff's gender. *See Oncale*, 523 U.S. at 80-81 ("Whatever the evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimination* . . . because of . . . sex.'"); *see also Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir. 1994) ("The first is whether the plaintiff was, *because of her sex*, subjected to hostile, intimidating, or degrading behavior, verbal or nonverbal, as to affect adversely the conditions under which she

worked; *for Title VII is not directed against unpleasantness per se* but only, so far as relates to this case, against discrimination. . . .") (emphasis added); *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 427 (7th Cir. 2004) (explaining that one of the main flaws in plaintiff's harassment reporting was "that the majority of conflicts with coworkers were work-related and did not involve racial or sexual insults. . . .").

Plaintiff also asserts that "[b]etween January 25, 2015 and present day several other subordinate employees have complained to the Defendant about unwelcome treatment subjected upon them by Ms. Bury. The statistical majority of said complainants were male. At least 6 of said complaints complained about Ms. Bury between November 2016 and February 2017." Additionally, in his response to Defendant's Motion to Dismiss, Plaintiff cites a series of cases showing that discrimination can be proven through statistical evidence. (Doc. 21 at 3).

However, Plaintiff has not alleged any statistical evidence. Rather he has alleged the conclusory statements like "[t]he preponderance of statistical evidence in possession of the Defendant will reflect that the majority of complaint referenced in [the previous paragraph] are male." (Doc. 16 at 5). This is nothing more than a conclusory statement. The cases Plaintiff cites stand for the rule that discrimination may be proven by statistics; however, they do not stand for the assertion that conclusory statements about statistics are sufficient to survive a motion to dismiss. Therefore, they do not support Plaintiff's allegations.

Furthermore, these conclusory statements do nothing to support Plaintiff's claim of a hostile work environment, because Plaintiff's assertions that other male employees complained about Ms. Bury does not provide factual support for his

allegation that Ms. Bury harassed him because of his sex. Plaintiff admits that he has no idea how many employees work under Ms. Bury and gives no information about the percentage of males and females working under her. (Doc. 21 at 3). Instead, he merely speculates that there is "statistical evidence that Ms. Bury regularly discriminates against males." (Doc. 21 at 3). Plaintiff has only brought forth three accusations of discrimination by Ms. Bury—one from Plaintiff, one from Mr. Ghere, and one from Ms. Goldberg.[6] Three instances is insufficient to rise to the claim of statistical evidence. Without additional **factual** allegations, Plaintiff's claims do not rise above the speculative level required to survive a motion to dismiss.

Additionally, the Court cannot consider his allegations about the "Red-Purple List" from November 2016 to February 2017, because they arise after he filed both the EEOC claim and this case. "[C]laims brought in judicial proceedings must be within the scope of the charges filed with the EEOC; 'an aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination.'" *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). Plaintiff brought his complaint to the EEOC in April of 2016; therefore, he clearly could not have brought these allegations of discrimination

---

[6] Additionally, Mr. Ghere's complaints to Defendant about Ms. Bury were not allegations that Ms. Bury discriminated against him because of gender. (Doc. 16 at 43). Rather, Mr. Ghere alleged that Ms. Bury discriminated against him based off of medical issues. (Doc. 16 at 43). Additionally, Plaintiff does not allege that Ms. Bury discriminated against Ms. Goldberg because of gender. Therefore, these examples provide no factual support for Plaintiff's conclusory statement that Ms. Bury discriminates based on gender. Rather, they show that Ms. Bury is a difficult personality to get along with and that she has managerial disagreements with her subordinates for a variety of reasons.

from November 2016 to February 2017 to the EEOC. Because they were not part of his EEOC complaint, they cannot be considered now.

### iv. WORKPLACE WAS NOT *OBJECTIVELY* HOSTILE

Plaintiff failed to allege sufficient facts to support beyond speculation that his work environment was subjectively and objectively hostile. In determining whether a workplace is objectively hostile, the Court considers the totality of the circumstances, including: 1) the frequency of the conduct; 2) the severity of the conduct; 3) whether the conduct was physically threatening or a humiliating, or merely an offensive utterance; and 4) whether it interferes with the employee's work performance. *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).

Even when viewed in their totality, Plaintiff's allegations are not sufficient to be objectively hostile. Outside of Plaintiff's allegations pertaining to Ms. Bury's comments on his second job, Plaintiff provides seven examples of harassment that Ms. Bury allegedly performed over seven and a half years. (Doc. 16 at 6-7). That is less than one instance per year, which is hardly frequent enough to be considered objectively hostile. Additionally, both of these remarks were made outside of the presence of Plaintiff; therefore, they were not told to him directly. Because he heard them second-hand, it lessens the severity of the comments. *See Adusumilli v. City of Chi.*, 164 F.3d 353, 362 (7th Cir. 1998) (citing *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1144 (7th Cir. 1997)).

Additionally, these examples are not severe enough to be considered objectively hostile. The allegations include "intentionally scolding" him about his work performance; remarking to another coworker about Plaintiff's salary; denying

Plaintiff's request for another employee; and objecting to offensive personal items on Plaintiff's desk. None of these are physically threatening or humiliating. Plaintiff alleges only one instance that was physically threatening, which is when Ms. Bury slammed her office door after speaking to him. However, one door-slamming is insufficient to sustain an objectively hostile work environment. *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993) (citing *Weiss v. Coco-Cola Bottling Co. of Chi.*, 990 F.2d 333, 337 (7th Cir. 1993) to support that "relatively isolated" instances of misconduct are not severe enough to support a hostile environment claim).

As pertaining to his second job, Plaintiff only alleges generally that Ms. Bury made comments about it being unfair that he had a second job on the weekends and that she was considering a formal on call system. (Doc. 16 at 10). Just because Plaintiff believes them to be hostile, intimidating, harmful, and extra concerning, that does not mean that they rise to the level of objectively hostile. (Doc. 16 at 10). Plaintiff's alleged statements by Ms. Bury, as generally phrased in his Amended Complaint, do not rise to the level of objectively hostile. A reasonable person would not find a comment by a manager that it was unfair an employee have a second job because it could interfere with his ability to perform his first job as an abusive or hostile remark pertaining to Plaintiff's gender. Likewise, a reasonable person would not find that a comment about implementing an "on call rotation" as an abusive or hostile remark pertaining to Plaintiff's gender. *Harris*, 510 U.S. at 21 (explaining that the environment must be one that a "reasonable person would find hostile or abusive."). The harassment must be objectively hostile, because the "'mere utterance

of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of the employment to implicate Title VII." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 91 (1986)).

While it is clear that Plaintiff and Ms. Bury had a poor work relationship, Plaintiff has offered no allegations, to support beyond speculation, that he was subject to an objectively hostile work environment, rather than one that he was upset with. *See Saxton*, 20 F.3d at 535 (explaining that a supervisor's "inaccessibility, condescension, impatience, and teasing" may make a plaintiff's work life subjectively unpleasant, but it was not sufficiently severe or pervasive to alter the conditions of employment and create a hostile work environment). Plaintiff's conclusory allegation that Ms. Bury "has purposely gone into the Plaintiff's with [sic] the intent to harass the Plaintiff on an otherwise peaceful day" (Doc. 16 at 6) is insufficient to raise his claim above speculation. *Lanton v. City of Chi.*, No. 16-C-2351, 2016 U.S. Dist. LEXIS 108805, at *19-21 (N.D. Ill. Aug. 17, 2016).

v.  **HARASSMENT NOT ALLEGED TO BE SEVERE OR PERVASIVE**

Last, Plaintiff does not allege facts to support beyond speculation that the harassment was severe or pervasive. Plaintiff has only alleged the comments about his second job in generalities and his provided no specific comments; however, the general comments about unfairness and an "on call rotation" were not severe. Additionally, the severity of the harassment is already diminished because Ms. Bury did not make the comments about his job directly to him. (Doc. 16 at 10). Therefore, these comments are "second-hand harassment" and are not as severe as if the

comments had been made directly to him. *Adusumilli*, 164 F.3d at 362 (citing *Gleason,* 118 F.3d at 1144).

Furthermore, Plaintiff has not alleged facts to support beyond speculation that the harassment was pervasive. Plaintiff has alleged that Ms. Bury made a remark about his second job on or around April 17th, 2015, and again on or around July 14th, 2015 (Doc. 1 at 8-9). Allegations of two comments over the course of four months is not sufficient to support an allegation of pervasive harassment beyond speculation. *See generally Faragher*, 524 U.S. at 788 ("A recurring point in these opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"); *see also Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) ("With that in mind, we have said that relatively isolated instances of nonsevere misconduct will not support a claim of hostile environment.").

As previously discussed, outside of Plaintiff's allegations pertaining to Ms. Bury's comments on his second job, Plaintiff seven examples of harassment that Ms. Bury allegedly performed over seven and a half years. (Doc. 16 at 6-7). That is less than one instance per year, which is hardly frequent enough to be considered pervasive. Therefore, Plaintiff has failed to allege sufficient factual details to support his claims of a Title VII hostile work environment beyond a speculative level and the claim must be dismissed.

### B. Plaintiff's Allegations of Gender Discrimination under Title VII

Plaintiff has also failed to state sufficient facts to raise his allegations of gender discrimination under Title VII above speculation. Plaintiff only enumerates one

claim. However, because the Court reads a pro se complaint with broad leeway, it appears that Plaintiff alleges two claims of discrimination. Plaintiff's first allegation is that Defendant failed to issue him an internal restraining order. However, Plaintiff has failed to sufficiently state a claim of gender discrimination because he has alleged no adverse employment action. Plaintiff's second allegation is that Ms. Bury gives smaller raises to males than females in her division. However, Plaintiff has plead himself out of Court because he alleges facts that Ms. Bury thought Plaintiff's salary was too high compared to another one of Plaintiff's male coworkers. Therefore, Plaintiff has not plead sufficient facts to raise beyond speculation that his gender was the cause of his lower raise and not his overall salary, which is not a protected trait. Each of these claims will be discussed in turn.

### i. PLAINTIFF'S ALLEGATIONS THAT DEFENDANT DISCRIMINATED AGAINST HIM BECAUSE THEY DID NOT ISSUE HIM AN "INTERNAL RESTRAINING ORDER"

Plaintiff has failed to states a claim of gender discrimination when Defendant refused to offer Plaintiff an "internal restraining order" because Plaintiff has not alleged any adverse employment action. Because he has not alleged an adverse employment action, he has not stated a claim for gender discrimination and his claim must be dismissed.

### a. LEGAL STANDARDS FOR TITLE VII DISCRIMINATION CLAIMS

Title VII makes it unlawful for an employer to "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The United States Court of Appeals for the Seventh Circuit establishes that

the legal standard in discrimination cases is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [sex] caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The Court is instructed to consider the evidence as a whole. *Id*.

In order to state a claim for gender discrimination, Plaintiff must allege that "the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his gender]." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013)). An adverse employment action has been defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761)).

### b. PLAINTIFF'S FACTUAL ALLEGATIONS PERTAINING TO THE "INTERNAL RESTRAINING ORDER"

Plaintiff alleges that Defendant discriminated against him based on his gender because Defendant did not issue him an "internal restraining order" like they issued a female colleague. (Doc. 16 at 12-13). Plaintiff alleges that Ms. Goldberg complained about Ms. Bury to Defendant's former provost, Dr. David Glassman. Plaintiff alleges that Dr. Glassman made accommodations for Ms. Goldberg in a manner similar to an "internal restraining order," preventing Ms. Bury from interacting with Ms. Goldberg. (Doc. 16 at 13). Dr. Glassman then retired and Defendant replaced him with Dr. Joan Sattler. (Doc. 16 at 13). Plaintiff requested an "internal restraining

order" from Defendant. (Doc. 16 at 13). Plaintiff was informed by the Director of HR that there was no such thing as an "internal restraining order" and if there was, Ms. Bury's behavior would not warrant use of one. (Doc. 16 at 13).

After Plaintiff filed an internal grievance, Plaintiff was then informed by Dr. Sattler that an ad hoc committee reviewed it and determined that it did not merit a formal review. (Doc. 16 at 41). Additionally, Dr. Sattler informed Plaintiff that she agreed with their determination. (Doc. 16 at 41).

Therefore, Plaintiff argues that Defendant discriminated against him by not offering him the "internal restraining order" and by refusing to investigate his internal grievance. (Doc. 16 at 17). Additionally, Plaintiff argues that Defendant "permitted [an] adverse employment action against Plaintiff" because Defendant promoted Ms. Bury into another management position with more authority over him and by refusing to move his office. (Doc. 16 at 17).

### c.  NO ADVERSE EMPLOYMENT ACTION

Plaintiff has not alleged an adverse employment action and therefore has failed to state a claim for gender discrimination. Courts have found adverse employment actions in the following types of situations: an employee's compensation or benefits are diminished; an employee is fired; where an employee is nominally transferred or experiences a change in his job that significantly reduces his career prospects; or where his work conditions are changed so as to subject him to a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Nichols v. S. Ill. University-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (quotations omitted).

None of these are applicable here. Plaintiff does not allege that he was demoted, or received a decrease in salary, or was transferred to a new department where his future job prospects where diminished. Plaintiff alleges that Defendants did not offer him an "internal restraining order." However, this has not created an adverse employment action, which has been defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Herrnreiter*, 315 F.3d at 744 (quoting *Ellerth*, 524 U.S. at 761)). Plaintiff does not allege that any of these occurred.

Plaintiff appears to be upset that Defendants did not take the action he wanted them to take after filing his complaints and internal grievances. (Doc. 21 at 8 ("In this case the Defendant does have policies and grievance mechanisms in place, but the Plaintiff argues to their 'effectiveness' as applicable to his situation with Ms. Bury.")). However, Plaintiff's exhibits show that his complaints and grievances were not ignored by Defendant. Rather, an ad hoc committee investigated his complaints and determined that they did not warrant further action. (Doc. 16 at 41). Plaintiff's unhappiness with the results of his grievance process is not an adverse employment action.

Additionally, Plaintiff argues that it was an adverse employment action because Defendant promoted Ms. Bury during this time and gave her greater "official power to implement her already well known tendencies of harassing behavior on the Plaintiff and other male subordinates." (Doc. 16 at 17). However, this is a conclusory allegation, not a fact. Additionally, Ms. Bury's promotion was not an adverse

employment action against Plaintiff. Ms. Bury's promotion did not change Plaintiff's employment. Additionally, her refusal to change offices is not an adverse employment action because there was no action taken.

Furthermore, the changed conditions must objectively—not subjectively—create a hardship, such as moving the employee's desk into a closet. *Herrnreiter*, 315 F.3d at 744-45 (citations omitted). As explained in § III.A.iv, Plaintiff's complaints of harassment did not create an objective hardship.

### d. PLAINTIFF'S FACTUAL ALLEGATIONS OF DECREASED RAISES

Plaintiff has plead himself out of court on any allegation that he received a lower raise because of his gender. In reading Plaintiff's Complaint with the leniency owed to *pro se* plaintiffs, Plaintiff alleges that Ms. Bury has discriminated against him by giving him a lower annual salary increase because he is male. (Doc. 16 at 5). Plaintiff alleges that Ms. Bury modified his annual employment evaluation to give him a lower score than his immediate supervisor had given him. (Doc. 16 at 5). Additionally, Plaintiff alleges that Ms. Bury has repeatedly and consistently received one of the lowest annual salary increases in her department. (Doc. 16 at 5). Plaintiff also alleges that Ms. Bury has "had a problem with the Plaintiff's salary from upon his hiring at Bradley, thinking said salary was too high." (Doc. 16 at 5).

Lastly, Plaintiff alleges that Ms. Bury discussed Plaintiff's salary level with Mr. Ghere, a co-worker of Plaintiff's. (Doc. 16 at 6). A statement by Mr. Ghere indicates that Ms. Bury approached Mr. Ghere after Plaintiff was rehired in 2007 and informed him that "although [Plaintiff and Mr. Ghere] would be performing similar duties, [Plaintiff's] starting salary would be significantly higher." (Doc. 16 at 42). Mr.

Ghere also started that Ms. Bury was unhappy with the salary and "wished that she could make the salary structure more 'fair.'" (Doc. 16 at 42). Mr. Ghere also indicated that he had been working for Defendant for a great deal longer than Plaintiff.

### e. PLAINTIFF DID NOT RECEIVE A LOWER ANNUAL SALARY INCREASE *BECAUSE OF* HIS GENDER

Plaintiff has not alleged facts beyond speculation that would allow a reasonable factfinder to determine that he received a lower annual salary increase because of his gender. To prove a Title VII discrimination claim, Plaintiff must show: "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [sex] caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. However, to survive a motion to dismiss challenge, a plaintiff 'must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *Atkins*, 631 F.3d at 832. "This means that the complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief." *Lavalais*, 734 F.3d at 633 (quotations omitted). However, Plaintiff has not alleged facts beyond speculation that his low annual salary increase amounts were because of his gender.[7]

First, Plaintiff's low annual salary increase is not an adverse employment action unless Plaintiff was entitled to the raise. *See Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996) ("[The] loss of a bonus is not an adverse employment action in

---

[7] Plaintiff argues in his response that Defendant has failed to exercise reasonable care to prevent and correct the sexually harassing behavior. (Doc. 21 at 10). However, the Defendant's reasonable care is an affirmative defense and affirmative defenses are not at issue here. The issue before the Court is whether Plaintiff's Amended Complaint sufficiently pleads a claim for Title VII discrimination. The deficiencies lies within Plaintiff's Amended Complaint and any possible affirmative defenses that Defendant may have are not currently before the Court.

a case such as this where the employee is not automatically entitled to the bonus."); *see also Miller v. Amer. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000) (applying *Rabinovitz* to raises). Plaintiff has not alleged that he was entitled to a raise. Furthermore, Plaintiff's contract, which was attached to his Response to the Motion to Dismiss, does not indicate that he was entitled to a raise. (Doc. 21 at 21). The contract simply says "[n]otification of any increase to your 2014-2015 salary will occur after October 1, 2014." (Doc. 21 at 21). This shows that if Plaintiff were to get a raise, he would be informed of this sometime in October. This does not state that he was entitled to a raise.

However, even if Plaintiff was entitled to a raise, Plaintiff's claim still fails. Plaintiff alleges that Ms. Bury gave him a low annual salary increase because he was male. However, Plaintiff's exhibit contradicts that assertion and indicates that Ms. Bury was upset that Plaintiff's salary was higher than another *male employee*, who had been working for Defendant longer and who was performing substantially similar work. (Doc. 16 at 42). Plaintiff's exhibit indicates that Ms. Bury was not upset with Plaintiff's salary because he was male, as Mr. Ghere was also male. (Doc. 16 at 42). Rather, Plaintiff's exhibit indicates that Ms. Bury thought it was unfair that Plaintiff would be paid substantially more than Mr. Ghere for performing the same work when Mr. Ghere had been employed with Defendant longer. (Doc. 16 at 42). Therefore, it is pure speculation on Plaintiff's part that Ms. Bury gave him a low annual salary increase than others; this is insufficient to survive a motion to dismiss. *Bogie*, 705 F.3d at 609 (7th Cir. 2013) (explaining that when an exhibit incontrovertibly

contradicts the allegations in the complaint, then the exhibit generally controls, even when the court is considering a motion to dismiss).

Additionally, Plaintiff appears to allege that Ms. Bury altered his annual review score which, drawing inferences in favor of Plaintiff, resulted in his low annual salary increase. However, this argument was rejected by the Court in Plaintiff's original Complaint. (Doc. 15 at 26-27). In an exhibit attached to the Complaint by Plaintiff, Plaintiff's supervisor explicitly states that he wrote the review and that Ms. Bury did not alter it. (Doc. 1 at 38 ("Once I finished I gave a copy of [Plaintiff's] review to [Ms. Bury. Ms. Bury] emailed me later that it was OK with her. I told [Plaintiff] that I wrote the review, and all of the words were mine.")). *Bogie*, 705 F.3d at 609 (7th Cir. 2013) (explaining that when an exhibit incontrovertibly contradicts the allegations in the complaint, then the exhibit generally controls, even when the court is considering a motion to dismiss). Therefore, Plaintiff's low annual review score was not given by Ms. Bury and cannot support, beyond speculation, an argument that his low score resulted in a low annual increase amount.

Plaintiff has not alleged facts sufficient to raise his claim of gender discrimination above speculation. Therefore, his claim must be dismissed for failing to state a claim upon which relief can be given.

## IV. CONCLUSION

Title VII is meant to protect those who are discriminated against because of a protected, immutable trait. Title VII does not protect against "standoffish, rude, or unprofessional behavior from coworkers." *Byrd v. Wis. Dep't of Veterans Affairs*, 98 F. Supp. 3d 972, 981 (W.D. Wis. 2015) (citing *Faragher*, 524 U.S. at 788 and *Erickson*,

569 F.3d at 790). While it is evident that the working environment that Plaintiff has is not ideal, a plaintiff is not entitled to cry discrimination simply because he disagrees with his manager, who is female. Nor is Plaintiff entitled to claim a hostile work environment because his manager made a comment about his second job—a second job is a choice, not an protected immutable trait.

Plaintiff was given an opportunity to amend his complaint and cure his deficiencies. He has not done so. Plaintiff continues to assert discrimination based on attributes that are not protected traits (i.e. his second job), these are allegations that cannot be cured by amendment. Therefore, Defendant's Motion to Dismiss (Doc. 18) is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE. *See Jefferson v. Stepp*, 16 F. App'x 474, 476 (7th Cir. 2001) (citing *Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751, 758 (7th Cir. 1988) (explaining that dismissal with prejudice under § 1915 is appropriate when the deficiencies in the pleading cannot be cured by amendment)).

CASE TERMINATED.


Entered this __15th___ day of August, 2017.


s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge